1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10
11

JENNIFER HOANG DO,

12

     Plaintiff,

13

     v.

14
15

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

16
17

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. ED CV 10-0154 JCG

**MEMORANDUM OPINION AND
ORDER**

18
19

## I.

20

## INTRODUCTION AND SUMMARY

21

     On January 29, 2010, plaintiff Jennifer Hoang Do ("Plaintiff") filed a

22

complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of

23

the Social Security Administration, seeking review of a denial of disability insurance

24

benefits ("DIB") and supplemental security income benefits ("SSI").  [Docket No.

25

1.]  On April 5, 2010, Defendant filed his answer, along with a certified copy of the

26

administrative record.  [Docket Nos. 10, 11.]

27

     On April 14, 2010, this matter was transferred to the calendar of the

28

undersigned Magistrate Judge.  [Docket No. 12.]  Both Plaintiff and Defendant

1  subsequently consented to proceed for all purposes before the Magistrate Judge

2  pursuant to 28 U.S.C. § 636(c).  [Docket Nos. 20, 21.]

3      Pursuant to a February 5, 2010 case management order, Plaintiff submitted a

4  motion for summary judgment or remand ("Plaintiff's Motion") on June 3, 2010.

5  [Docket No. 18.]  On July 7, 2010, Defendant submitted his motion for summary

6  judgment ("Defendant's Motion").  [Docket No. 19.]  The Court deems the matter

7  suitable for adjudication without oral argument.

8      In sum, having carefully studied, *inter alia*, the parties' papers and the

9  administrative record, the Court concludes that, as detailed herein, the Administrate

10 Law Judge inappropriately discounted Plaintiff's subjective complaints and thus

11 remands this matter to the Commissioner in accordance with the principles and

12 instructions enunciated in this Memorandum Opinion and Order.

13                                   **II.**

14            **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

15     Plaintiff, who was 27 years of age on the date of her administrative hearing,

16 has completed high school and two years of college.  (*See* Administrative Record

17 ("AR") at 16, 20, 91, 109.)  Her past relevant work includes employment as a tutor,

18 library page, receptionist, and fast food cashier.  (*Id.* at 14.)

19     Plaintiff protectively filed for DIB and SSI on October 22, 2007, alleging that

20 she has been disabled since November 15, 2005 due to a small cerebellum and weak

21 muscles affecting mobility and balance.  (AR at 43, 91-93, 94-97, 100.)  Plaintiff's

22 applications were denied initially and upon reconsideration, after which she filed a

23 timely request for a hearing.  (*Id.* at 34, 35, 36, 37, 38-42, 43-47, 48-49.)

24     On June 22, 2009, Plaintiff, proceeding *pro se*, appeared and testified at a

25 hearing before an ALJ.  (AR at 16, 18-28.)  The ALJ also heard testimony from

26 Plaintiff's mother Na Nguyen.  (*Id.* at 29-32.)

27     On September 11, 2009, the ALJ denied Plaintiff's request for benefits.  (AR

28 at 10-15.)  Applying the well-known five-step sequential evaluation process, the

2

ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability.  (*Id.* at 12.)

At step two, the ALJ found that Plaintiff suffers from a severe impairment of the "central nervous system."  (AR at 12 (emphasis omitted).)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1]  (AR at 12.)

The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and determined that she is limited to sedentary work.  (AR at 12.)  The ALJ also found that with respect to "standing and walking," Plaintiff "is limited to 2 hours of an 8-hour workday."  (*Id.* (emphasis omitted).)

The ALJ found, at step four, that Plaintiff lacks the ability to perform her past relevant work.  (AR at 14.)

At step five, based on Plaintiff's RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (AR at 14 (emphasis omitted).)  Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act.  (*Id.* at 10, 15.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council.  (AR at 1-4, 6.)  The ALJ's decision stands as the final decision of the Commissioner.

---

[1]   *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

1

**III.**

2

**STANDARD OF REVIEW**

3          This Court is empowered to review decisions by the Commissioner to deny

4     benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

5     Administration must be upheld if they are free of legal error and supported by

6     substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

7     *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings

8     are based on legal error or are not supported by substantial evidence in the record,

9     the court may reject the findings and set aside the decision to deny benefits.

10    *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,

11    242 F.3d 1144, 1147 (9th Cir. 2001).

12         "Substantial evidence is more than a mere scintilla, but less than a

13    preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant

14    evidence which a reasonable person might accept as adequate to support a

15    conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d

16    at 459.  To determine whether substantial evidence supports the ALJ's finding, the

17    reviewing court must review the administrative record as a whole, "weighing both

18    the evidence that supports and the evidence that detracts from the ALJ's

19    conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

20    simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d

21    at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

22    evidence can reasonably support either affirming or reversing the ALJ's decision,

23    the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*

24    (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

25

**IV.**

26

**ISSUES PRESENTED**

27         Five disputed issues are presented for decision here:

28         1.  whether the ALJ's failed to obtain an informed waiver of Plaintiff's right

4

1    to counsel, (*see* Pl.'s Mot. at 2-5);

2         2.    whether the ALJ erred in finding that Plaintiff fails to meet one of the

3    neurological listings of impairments, (*id.* at 5-10);

4         3.    whether the ALJ failed to properly consider the opinions of Plaintiff's

5    treating physicians, (*id.* at 10-12);

6         4.    whether the ALJ failed to properly assess the credibility of Plaintiff and

7    her mother, (*id.* at 13-15); and

8         5.    whether the ALJ erred in failing to obtain testimony from a vocational

9    expert.  (*Id.* at 16.)

10        At this juncture, the Court finds the issue of Plaintiff's credibility to be

11   dispositive of this matter, and does not reach the remaining issues.

12                                    **V.**

13                      **DISCUSSION AND ANALYSIS**

14        Plaintiff argues that "the ALJ has failed to properly consider [Plaintiff's]

15   testimony and he has failed to cite any evidence of record indicating that . . . Plaintiff

16   . . . [is] exaggerating [her] symptoms and limitations or malingering in any way.

17   Furthermore, the ALJ has failed to provide any clear and convincing reasons for

18   rejecting the consistent and credible complaints of [Plaintiff]."  (Pl.'s Mot. at 13.)

19        Defendant contends that the ALJ properly discounted Plaintiff's credibility

20   because:  (1) "the objective medical evidence did not support the degree of disability

21   alleged by Plaintiff"; (2) Plaintiff's own statements contradict her allegations of

22   disability"; and (3) "Plaintiff's activities are not congruent with her allegations of

23   total disability."  (*See* Def.'s Mot. at 12-14.)

24        A.    The ALJ Must Provide Clear and Convincing Reasons For Discounting

25              Plaintiff's Subjective Complaints

26        Plaintiff, of course, carries the burden of producing objective medical

27   evidence of his or her impairments and showing that the impairments could

28   reasonably be expected to produce some degree of the alleged symptoms.  *Benton ex*

                                       5

1   *rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff

2   meets that burden, medical findings are not required to support the alleged severity

3   of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *see also*

4   *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997, *as amended* Sept. 17,

5   1997) ("[A] claimant need not present clinical or diagnostic evidence to support the

6   severity of his pain.") (internal citation omitted).

7       Under these circumstances, an ALJ can then reject a plaintiff's subjective

8   complaint "only upon (1) finding evidence of malingering, or (2) expressing clear

9   and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may

10  consider the following factors in weighing a plaintiff's credibility:

11      (1) his or her reputation for truthfulness;

12      (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's

13  testimony and his or her conduct;

14      (3) his or her daily activities;

15      (4) his or her work record; and

16      (5) testimony from physicians and third parties concerning the nature,

17  severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*,

18  278 F.3d 947, 958-59 (9th Cir. 2002).

19      Here, the ALJ did not find evidence of malingering. (*See generally* AR at 10-

20  15). Thus, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear

21  and convincing reasons. *See Benton*, 331 F.3d at 1040. "General findings are

22  insufficient; rather, the ALJ must identify what testimony is not credible and what

23  evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834

24  (9th Cir. 1995, *as amended* April 9, 1996); *Reddick*, 157 F.3d at 722.

25      B.   Plaintiff's Subjective Complaints

26      At the administrative hearing, Plaintiff testified that she cannot work because

27  "I can be walking and I lose my balance." (AR at 21.) Plaintiff also described that

28  she can sit for "about 15 to 20" minutes. (*Id.* at 23.) Plaintiff stated that she has

experienced "these problems" for "six, seven years." (*Id.* at 21.) Plaintiff testified that her treating physician has "been conducting tests and researching [her disease, spinal cerebellar degeneration]," but her treating physician "says it's not curable" because "it's a degenerative disease." (*Id.* at 22; *see also id.* at 188.) Plaintiff also testified that she gets "headaches" a "couple of times a week" that can "last up to a day." (*Id.* at 26.)

Plaintiff further testified that she is a junior at Cal State San Bernardino and that the farthest she drives "at any one time" is "to school and back," which is about "20 minutes" from Riverside, where Plaintiff lives. (AR at 20, 24.) When questioned whether she stands or sits during her one hour class, Plaintiff responded that she "sit[s] down." (*Id.* at 26-27.) Plaintiff also stated, "[m]y teachers they know of my condition, so I tell them that I need to sit down and not stand up as much because if I'm like walking along the classroom [to do a presentation] I might lose my balance and fall and I don't want to do that in front of my classmates." (*Id.* at 27.)

At the hearing, Plaintiff also stated that she lives in a house with her parents, two brothers, two sisters and her son, who is two and a half years old. (AR at 25.) Plaintiff described that she is unable to hold her son because he is "too heavy" and is unable to walk "with him down the street" because "he'll run" and she is unable to "run after him." (*Id.* at 28.)

C.   ALJ's Purported Reasons For Discounting Plaintiff's Credibility

In rejecting Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR at 13.) The ALJ further provided a summary of Plaintiff's testimony, but found that "[d]espite the asserted sitting limits she must sit up to 1 hour in class. . . . Despite the established

7

1   impairment, [Plaintiff] remains quite active and is well able to tolerate regular

2   driving, full time attendance at college and taking care of the active toddler." (*Id.* at

3   13-14.)

4       D.   ALJ Inappropriately Discounted Plaintiff's Credibility

5       After a careful review of the medical record and the parties' papers, the Court

6   has considered the ALJ's reasons for finding Plaintiff not credible, and concludes

7   that a remand is warranted on this issue.  Three reasons guide this Court's

8   determination.

9       First, the ALJ erred to the extent he rejected Plaintiff's credibility based on a

10  lack of objective medical evidence.  (*See* AR at 13.)  Plaintiff provided sufficient

11  medical evidence of an underlying impairment that was reasonably likely to cause

12  the symptoms she described.  For instance:

13      1.   An MRI Radiology Report, dated May 18, 2007, stated that there is

14  "[m]arked atrophy of the cerebellum, particularly the vermis which may be

15  secondary to Dandy-Walker malformation, possibly in conjunction with Dilantin

16  usage."[3/]  (*Id.* at 162.)

17      2.   A treatment note, dated June 11, 2007, described that Plaintiff has

18  "much difficulty touching end of her nose with finger, missed by about 2 inches"

19  and "continues to have obviously abnormal gait[, and s]ways back and forth when

20  walking at times, some times worse than others, some leg/hip shaking when going to

21  sit up on exam table." (*Id.* at 137, 139.)

22      3.   A Disability Report, dated October 22, 2007, and completed by "F.

23

24      [3/]   Cerebellum is the "large posterior brain mass lying posterior (dorsal) to the
    pons and medulla and inferior to the tentorium cerebelli and posterior portion of the
25  cerebrum; it consists of two lateral hemispheres united by a narrow middle portion,
    the vermis." *Stedman's Medical Dictionary* 350 (28th ed. 2006).  Dandy-Walker
26  syndrome is a "developmental anomaly of the fourth ventricle associated with atresia
    of the foramina of Luschka and Magendie that results in cerebellar hypoplasia,
27  hydrocephalus, and posterior fossa cyst formation." *Id.* at 1895.

28

1    Orozco" reported that Plaintiff "was walking all crooked[;] her balance was of[f].
2    She was not able to walk in a straight line.  She was really skinny.  She had
3    difficulty standing & sitting down ." (*Id.* at 100-103.)

4        4.   A letter, dated May 7, 2009, from treating neurologist Waseem N.
5    Ibrahim, M.D. ("Dr. Ibrahim") stated that the "patient has spinal cerebellar
6    degeneration.  This is a hereditary and disabling disease that is not curable, and it
7    causes incoordination in the upper and lower extremities."[4/]  (*Id.* at 188.)

8    _____

9    [4/]   Although the Court declines to address Plaintiff's claim regarding the ALJ's
10   evaluation of the medical evidence, the Court notes that the ALJ's rejection of Dr.
     Ibrahim's opinion does not appear to be supported by substantial evidence.

11       The ALJ's rejection of "the indulgent and accomodative letter from Dr.
12   Ibrahim . . . [because it] is inconsistent with his records . . . in which he states that
     only some types of work are precluded by [Plaintiff's] condition" is unpersuasive.
13   The "records" referred to by the ALJ is an initial neurological consultation report
14   completed by Dr. Ibrahim on December 18, 2007 in which he performed a
     neurological examination of Plaintiff and indicated his opinion that Plaintiff "is
15   disabled from certain jobs because of her neurologic dysfunction."  (AR at 163-64.)
16   However, in the report, Dr. Ibrahim also stated that he "will request an MRI of the
17   cervical and thoracic spine, as well as an EMG/nerve conduction study on the upper
     and lower extremities" and a "final diagnosis will be determined after the above is
18   available." (*Id.* at 164.)  In contrast, Dr. Ibrahim's letter was written approximately
19   one year and five months later on May 7, 2009 and he stated, Plaintiff "has been
     under my care for the past 2 years. . . . It is my opinion that this patient should be
20   given permanent disability status." (*See id.* at 188.)  Accordingly, the "inconsistent"
21   records referred to by the ALJ were inconclusive at best.

22       In any event, the ALJ was free to ignore the portion of Dr. Ibrahim's opinion
     regarding Plaintiff qualifying for "permanent disability status."  *See* 20 C.F.R. §§
23   404.1527(e) (The Commissioner is charged with determining the ultimate issue of
24   disability) & 416.927(e) (same).  Dr. Ibrahim's indication that Plaintiff is disabled,
     however, does not mean that his assessment was biased and there is no evidence in
25   the record to suggest that Dr. Ibrahim's overall opinion is "indulgent and
26   accommodative."  *See also Lester*, 81 F.3d at 832 (in the absence of actual
     improprieties, "[t]he Secretary may not assume that doctors routinely lie in order to
27   help their patients collect disability benefits[]") (internal quotation marks and
28   citation omitted).

5.      A letter, dated November 6, 2009, from treating physician Revel T. Gaskins, M.D. stated that Plaintiff "suffers from progressive spinal cerebellar degeneration."  (*Id.* at 201.)

Because Plaintiff produced sufficient medical evidence of an underlying impairment that is likely to cause difficulty in balancing and other subjective symptoms, the ALJ erred to the extent he rejected Plaintiff's credibility based upon a lack of objective findings to support her allegations.  *See Bunnell*, 947 F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); Social Security Ruling ("SSR") 96-7P,[5] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Second, the ALJ's rejection of Plaintiff's credibility based on her daily activities is not supported by substantial evidence.  The ALJ found that Plaintiff "remains quite active and is well able to tolerate regular driving, full time attendance at college, and taking care of the active toddler."  (AR at 13-14.)  However, Plaintiff explained that driving to her school in San Bernardino from her home in Riverside takes "[a]bout 20 minutes," her teachers "know of [her] condition" and are able to

---

[5] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

accommodate her limitations, and she has difficulty in keeping up with her toddler. (*See id.* at 24, 27, 29.)  Further, Plaintiff's mother testified that "everybody around us, like we help give the baby a bath and everything and we afraid she is going to drop him and everything. . . . When she's at home, someone always helps her."  (*Id.* at 30-31.)  Thus, the ALJ's paraphrasing of Plaintiff's daily activities is not entirely accurate.  *See Reddick*, 157 F.3d at 722-23 ("[T]he ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports.  His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

Further, Plaintiff's activities do not support the ALJ's rejection of her subjective complaints or the ALJ's conclusion that she is able to sustain gainful employment, as none of Plaintiff's activities translate into an ability to do activities that are transferable to a work setting.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily activities translated into the ability to perform appropriate work); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

The fact that Plaintiff attends class and drives to school does not render her subjective complaints incredible, as Plaintiff is not required to "vegetate in a dark room excluded from all forms of human and social activity" in order to be found disabled.  *Smith v. Califano*, 637 F.2d 968, 971 (3d. Cir. 1981).  And, as the Ninth Circuit has recognized, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  *Reddick*, 157 F.3d at 722.

Third, while the ALJ properly found Plaintiff's statements regarding her ability to sit inconsistent, the Court is unconvinced that the ALJ's decision remains legally valid, despite the errors in the credibility analysis.  (*See* AR at 13 ("Despite

the asserted sitting limits she must sit up to 1 hour in class.")); *Carmickle v. Comm'r
*, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that the "relevant inquiry . . . is
whether the ALJ's decision remains legally valid," despite errors in the credibility
analysis).

## VI.

## **REMAND IS APPROPRIATE**

The court has discretion to remand or reverse and award benefits. *McAllister
v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989).  Where no
useful purpose would be served by further proceedings, or where the record has been
fully developed, it is appropriate to exercise this discretion to direct an immediate
award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004);
*Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000),
*cert. denied*, 531 U.S. 1038 (2000).  Where there are outstanding issues that must be
resolved before a determination can be made, and it is not clear from the record that
the ALJ would be required to find plaintiff disabled if all the evidence were properly
evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211
F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final
determination can be made.  On remand, the ALJ shall reconsider Plaintiff's
subjective complaints and the resulting functional limitations, and either credit
Plaintiff's testimony or provide clear and convincing reasons supported by
substantial evidence for rejecting them.  The ALJ shall also reassess the credibility
of Plaintiff's mother.  In addition, the ALJ shall reassess the medical opinions in the
record and provide sufficient reasons under the applicable legal standard for
rejecting any portion of the medical opinions.  If necessary, the ALJ shall obtain
additional information and clarification regarding Plaintiff's functional limitations.
Further, the ALJ shall then proceed through steps three through four and, with the

1  assistance of a vocational expert, reassess his step five determination.[6/]

2      Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

3  **REVERSING** the decision of the Commissioner denying benefits and

4  **REMANDING** the matter for further administrative action consistent with this

5  decision.

6

7

8  Dated: January 21, 2011                    _____

9

10                                              Hon. Jay C. Gandhi
                                            United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27      [6/]  In light of the Court's remand instructions, it is unnecessary for the Court to

28  address Plaintiff's remaining contentions.  (*See* Mot. at 2-5, 5-10, 10-12, 16.)